OPINION
{¶ 1} The state appeals from an order of the Champaign County Court of Common Pleas, which sustained the motion of Kenneth D. Baker to suppress evidence.
 {¶ 2} The record reveals the following facts.
 {¶ 3} On April 4, 2004, Stacy Harper, a social worker for Children's Services in Champaign County, and Officer Todd Pratt of the Urbana Police Department went to Baker's apartment to interview him regarding allegations that he had engaged in improper sexual conduct with his grandson. Pratt was not in uniform, although he was wearing his badge and his gun; he also had a Sony digital voice recorder with him. After turning on the recorder, Harper and Pratt knocked on the door. Baker told them to "go ahead and come in." Harper and Pratt entered and saw Baker eating a steak meal at his kitchen table. Harper introduced herself and Pratt to Baker. Baker responded by saying: "I called a lawyer. He wants — the lawyer wants to be here before I say anything." Pratt asked for the attorney's name but Baker could not immediately remember the name of the attorney with whom he had spoken. Pratt tried to assist him with recalling the name, and Baker was able to look it up for Pratt. Baker told Pratt that the attorney's name was George Pappas, and he gave Pratt the telephone number.
 {¶ 4} Using his cellular telephone, Pratt called Pappas at his office and asked Pappas if he represented Baker. Pratt told him that "[t]here is no charge. We're — we're just doing an investigation. It's in reference — it's in reference to his grandson." According to Pratt, Pappas indicated that he had spoken with Baker and had told Baker that "if the police ever come around or want to interview you to have an attorney present before you talk to them." Pappas also told Pratt that he did not officially represent Baker, that Baker had not paid any retainer fee, and that he could not invoke Baker's rights for him. Pappas also stated that he would advise Baker not to talk to Pratt and Harper.
 {¶ 5} After hanging up the telephone, Pratt and Baker had the following conversation:
 {¶ 6} Pratt: "Okay. He said that he does remember talking to you, and he did tell you, you know, that that was, you know, your right to talk to someone. But he said you haven't actually retained him. He hasn't actually received any money."
 {¶ 7} Baker: "No."
 {¶ 8} Pratt: "So he's not actually your attorney."
 {¶ 9} Baker: "Yeah."
 {¶ 10} Pratt: "But, but that was just some advice when you guys talked."
 {¶ 11} Baker: "Yeah."
 {¶ 12} Pratt: "So since he (sic) hasn't retained you do you want to go ahead and talk to us and see what this is all about, see if we can get this matter resolved?"
 {¶ 13} Baker: "Yeah. It needs resolved."
 {¶ 14} Pratt: "Okay. That's what we want to do. I'm going to let Stacy talk to you a little bit about, you know, her end of it. Is that all right with you?"
 {¶ 15} Baker: "See. What happened he's staying with me when my wife and daughter goes to work. * * *"
 {¶ 16} On April 15, 2004, the state filed a nine count indictment against Kenneth D. Baker, alleging one count of rape, one count of sexual battery by coercion, one count of sexual battery when the offender is in loco parentis to the victim, and six counts of gross sexual imposition. Baker pled not guilty by reason of insanity and filed a motion to determine his competency to stand trial. On June 18, 2004, the court found that Baker was competent to stand trial and that he did not meet the criteria for legal insanity.
 {¶ 17} That same day, Baker moved to suppress the statements that he had made on April 4, 2004, arguing that he had been subjected to a custodial interrogation, that he had invoked his right to an attorney, and that his incriminating statements had not been voluntarily given. A hearing on the motion was held on July 7, 2004, during which Pratt and Harper testified. The state also admitted into evidence the recording of the interview between Pratt, Harper, and Baker. On August 26, 2004, the trial court sustained the motion to suppress, reasoning that Baker had not made a voluntary statement to the police. The court made the following specific written findings:
 {¶ 18} "1. A confession is a voluntary statement that covers the entire transaction that is the subject of the interview."
 {¶ 19} "2. An admission is a voluntary statement that acknowledges some circumstances which tend to prove guilt."
 {¶ 20} "3. Most of the Defendant's statements were acknowledgments (uh, yes, that's right) by Defendant of the `leading questions' posed by Officer Pratt."
 {¶ 21} "4. The Defendant was not in custody at the time of the interview. The Defendant began the interview by announcing that he had been advised by his lawyer not to talk to the police unless the lawyer was present."
 {¶ 22} "5. Officer Pratt made a telephone call to the lawyer and reported to the Defendant that the lawyer did not represent the Defendant."
 {¶ 23} "6. The lawyer advised Officer Pratt in the phone conversation that if he were the Defendant's lawyer, he would advise him not to talk."
 {¶ 24} "7. Officer Pratt did not relay that information to the Defendant."
 {¶ 25} "8. Officer Pratt did not administer a Miranda warning to the Defendant."
 {¶ 26} "9. Officer Pratt did not advise the Defendant that if he wished to maintain his legal advisor's determination not to talk without a lawyer present that a lawyer would be provided for him in order to have the conversation."
 {¶ 27} "10. The Defendant was in a wheelchair in his apartment and in the courtroom hearings."
 {¶ 28} "11. The Defendant's age was estimated to be 75."
 {¶ 29} "12. Defendant looks and acts older."
 {¶ 30} The state appeals the trial court's suppression ruling, claiming that the trial court erred by sustaining the motion to suppress.
 {¶ 31} In its sole assignment of error, the state asserts that the motion to suppress should have been overruled for three reasons. First, the state argues that Baker did not unequivocably invoke his right to counsel. Second, the state contends that only custodial interrogation triggers Miranda warnings and that a person who is not in custody cannot invoke his right to counsel and foreclose further questioning by the police. Third, the state argues that Baker was not in custody when he allegedly requested an attorney.
 {¶ 32} The Fifth Amendment provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." "TheFifth Amendment privilege against compulsory self-incrimination `protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humbolt Cty.
(2004), 540 U.S. ___, 124 S.Ct. 2451 (quoting Kastigar v. United States
(1972), 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212); Ohio v. Reiner
(2001), 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.E.2d 158. TheSixth Amendment to the United States Constitution provides that an individual has a right to the assistance of counsel for his defense in all criminal prosecutions. However, this right attaches only at the initiation of adversarial criminal proceedings. United States v. Davis (1994),512 U.S. 452, 456-57, 114 S.Ct. 2350, 129 L.Ed.2d 362; State v. Williams
(1997), 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446. Nevertheless, the United States Supreme Court has held that "a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins." Davis, 512 U.S. at 457, citing Miranda v. Arizona (1966), 384 U.S. 436, 369-73, 86 S.Ct. 1602,16 L.Ed.2d 694. When a suspect waives his right to counsel after Miranda
warnings have been given, law enforcement officers are free to question him. However, once a suspect requests counsel, the police must cease their interrogation until an attorney has been provided or the suspect himself reinitiates conversation. Edwards v. Arizona (1981), 451 U.S. 477,484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378; Davis, 512 U.S at 458.
 {¶ 33} Whether a suspect has invoked his right to counsel is an objective inquiry. Id. A request for an attorney must be clear and unambiguous such that a reasonable police officer in the circumstances would understand the statement to be an invocation of the right to counsel. Davis, 512 U.S. at 459; see State v. Murphy, 91 Ohio St.3d 516,520, 2000-Ohio-112, 747 N.E.2d 765. The Supreme Court of Ohio has held that the statement "I think I need a lawyer" was not an unequivocal assertion of the right to counsel. State v. Henness (1997),79 Ohio St.3d 53, 63, 679 N.E.2d 686. "Don't I supposed to have a lawyer present" has also been found to be ambiguous. State v. Brown,100 Ohio St.3d 51, 56, 2003-Ohio-5059, 796 N.E.2d 506.
 {¶ 34} "If a suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis, 512 U.S. at 461-62.; Brown, 100 Ohio St.3d at 56. Moreover, the officers have no obligation to ask clarifying questions to ascertain if the suspect is attempting to invoke his right to counsel. Davis,
supra. A suspect's Fifth Amendment right to an attorney during custodial interrogation is personal to that individual and cannot be invoked by the suspect's attorney. Williams, supra, at ¶ 30.
 {¶ 35} In the present case, we find no evidence that Baker unambiguously requested the presence of an attorney. Baker told Pratt and Harper that "I called a lawyer. He wants — the lawyer wants to be here before I say anything." Baker's statement reflects only that his attorney wished to be present during any questioning — not that Baker himself wanted his attorney to be present. Even if Pappas had been retained as Baker's attorney, he could not invoke Baker's right to counsel for Baker, and Baker did not articulate an independent desire to have counsel there. To the contrary, upon hearing from Pratt that Pappas had not been retained by Baker (and Baker agreed with that statement), Baker expressed an interest in talking to Pratt and Harper in order to get the matter resolved. Put differently, Baker — with knowledge that an attorney had advised him not to speak to the authorities without the presence of an attorney — chose to speak with Pratt and Harper. Accordingly, Baker did not invoke his right to counsel, and Pratt and Harper did not violate his right to counsel when they questioned Baker outside the presence of an attorney.
 {¶ 36} In addition, we agree with the state that Baker was not entitled to Miranda warnings and had no constitutional right to counsel under the circumstances. The trial court found that Baker was not in custody at the time that he was questioned by Pratt and Harper. We find that conclusion to be supported by the record. Because Baker was not in custody, Pratt was not required to provide him with Miranda warnings, and Baker had no constitutional right to have an attorney present during the non-custodial questioning. See State v. Biros, 78 Ohio St.3d 426, 440,1997-Ohio-204, 678 N.E.2d 891 ("Only custodial interrogation triggers the need for Miranda warnings."), citing Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719. Of course, Baker could have refused to speak with Pratt and Harper until he had retained an attorney, and he was free to ask Pratt and Harper to leave his residence.
 {¶ 37} Baker relies upon State v. Ingram (1992), 82 Ohio App. 3d 341,612 N.E.2d 454, to demonstrate that "the factors of age, mobility and the small area could just as easily have been used to construe that Mr. Baker was in fact in custody." In Ingram, we affirmed the trial court's conclusion that Ingram had been seized for purposes of theFourth Amendment when he was questioned by two officers while sitting on a small railed porch and his way was blocked so that he could not exit to the street. The opinion makes clear, however, that Ingram was subjected to an investigatory detention, not to arrest. We likewise noted that "this record may have supported a contrary finding that Ingram was not seized." Id. at 345. Ingram does not support Baker's contention that he was in custody. See Biros, 78 Ohio St.3d at 440 (custody requires "`formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest"); Berkemer v. McCarty (1984), 468 U.S. 420, 441-42,104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 38} In support of his assertion that he was in custody at the time he was questioned by Pratt and Harper, Baker also cites to Orozco v.Texas (1969), 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311, and State v.Waldo, Champaign App. No. 99CA24, 2001-Ohio-1349. In Orozco, the Supreme Court concluded that the suspect was in custody when he was awakened and interrogated in his bed by four officers at 4:00 a.m. and an officer had testified that he was under arrest once he had provided his name. InWaldo, we concluded that incriminating statements should have been suppressed when the suspect was interrogated around 4:30 a.m., he was intoxicated and had not slept all night, he was young and had no prior contact with the criminal justice system, the police refused his request to use a restroom despite his statement that he had a strong need to urinate, and the officers lied to him about a fictitious test which indicated that he was guilty. We find these cases to be factually distinguishable from the case before us and unpersuasive.
 {¶ 39} Finally, Baker's statements were not coerced due to Pratt's failure to relay to Baker Pappas's statement that, if he were Baker's lawyer, he would advise him not to talk. Baker already knew that Pappas did not want Baker to talk to the police without an attorney present. When the officer called Pappas, the attorney indicated that he had not been retained by Baker, and Baker agreed with that statement. With knowledge of Pappas's advice, Baker decided to talk with the police. We find nothing coercive or improper about the officer's conduct.
 {¶ 40} The assignment of error is sustained.
 {¶ 41} The judgment of the trial court will be reversed.
Fain, J. and Young, J., concur.