[Cite as *State v. Banks-Harvey*, 2016-Ohio-4715.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26786 |
| | : | |
| v. | : | Trial Court Case No. 14-CR-2713 |
| | : | |
| JAMIE K. BANKS-HARVEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

AMY E. FERGUSON, Atty. Reg. No. 0088397, Ferguson Law Office, LLC, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

        {¶ 1} Jamie K. Banks-Harvey appeals from her conviction and sentence following

a no-contest plea to one count of heroin possession, a fifth-degree felony.

{¶ 2} In her sole assignment of error, Banks-Harvey contends the trial court erred in overruling her motion to suppress her confession to possessing heroin and the subsequent discovery of heroin in her possession.

{¶ 3} The sole witness at the suppression hearing was Ohio Highway Patrol Trooper Kyle Pohlabel. He testified that he observed several traffic violations committed by Shannon Halcomb, the driver of a vehicle in which Banks-Harvey was a passenger. Pohlabel made a traffic stop as a result of what he saw. Approximately one minute into the stop, he requested a K-9 unit. He did so based on his observation of what appeared to be fresh needle marks on both women's hands. Banks-Harvey subsequently was placed in the back of a police cruiser, where she was Mirandized. A drug dog arrived minutes later and alerted on Halcomb's vehicle. As a result, Pohlabel and other officers began searching it. They found a bloody rag and one empty capsule consistent with the type used to package heroin. Pohlabel believed that the rag may have been used to wipe away blood resulting from the recent use of a drug needle. The blood looked relatively fresh because it was red rather than brown.

{¶ 4} Based on the foregoing facts, Pohlabel handcuffed Banks-Harvey, who was still in the police cruiser, and began questioning her. He testified that she appeared to be "on something," but she was coherent and not disoriented. The questioning lasted two to three minutes, and Banks-Harvey never invoked her *Miranda* rights. During that time, Pohlabel told Banks-Harvey that he believed she had purchased drugs. He also told her that he believed she had drugs on her person. He further advised Banks-Harvey that, in his experience, women usually hid drugs up inside themselves. He explained that he was

going to get a warrant and that she was going to be checked thoroughly. Specifically, he told her that he was going to take her to a hospital, where she would be subjected to an ultrasound scan for drugs inside of her. Pohlabel warned Banks-Harvey that if drugs were found inside of her, she would be charged with evidence tampering, a third-degree felony, which he told her was "borderline a prison term" offense. He also told her that if he had to get a search warrant, she would be kept in jail for 48 hours and might become "dope sick." Conversely, Pohlabel advised Banks-Harvey that if she cooperated and admitted having drugs in her possession, she probably would be charged with fifth-degree felony possession, depending on the amount involved, and would be sleeping in her own bed that night. At that point, Banks-Harvey admitted that she had drugs concealed "up inside" of her vagina. She removed the drugs and gave them to the police. Pohlabel testified at the suppression hearing that, if Banks-Harvey had not admitted possessing the drugs, she would have been arrested for possession of drug paraphernalia (the empty capsule) and he would have attempted to obtain a search warrant.

{¶ 5} Following her admission and her surrender of the drugs, Banks-Harvey was charged with fifth-degree-felony heroin possession. She subsequently moved to suppress her confession and the drugs she had concealed. She argued, among other things, that her confession was involuntary and that police obtained the drugs as a result of that involuntary confession. Following a hearing, the trial court overruled Banks-Harvey's motion. The trial court found her confession voluntary, reasoning:

> * * * I note that Trooper Pohlabel, at least in my conclusion, in all probability, inaccurately told Ms. Harvey that she would be taken to the hospital to receive an ultrasound to determine if she was hiding contraband

on her person.

Such a procedure would require a warrant and given the circumstances it is unlikely that such a warrant would have been requested. In fact, Trooper Pohlabel indicated that in his experience that's occurred, to his knowledge, on one occasion. And given the circumstances of this case, in particular the fact that nothing happened in that regard as it relates to [the driver] Ms. Halcomb, I conclude that Trooper Pohlabel was using that statement about taking her to the hospital to get a scan as an inducement to be cooperative and to admit to the possession of heroin.

I also note that Trooper Pohlabel, though he may have believed otherwise, inaccurately informed Ms. Harvey that if drugs were found based upon the issuance of a warrant she would be charged with tampering, a third-degree felony, triggering, quote, borderline, end quote prison meaning, of course, that [with] a third-degree tampering charge that a prison term [was] considerably more likely.

I note that a tampering charge, since there's no evidence concerning when Ms. Harvey placed the heroin into her vagina would, to say the least, be a stretch though it does appear that Trooper Pohlabel incorrectly but nonetheless thought that a tampering charge in such a situation would be or could be appropriate.

But in any event, that information was certainly conveyed to Ms. Harvey as an inducement to get her to confess to her possession of heroin. The indication that—and it's certainly true that a third-degree offense is

more serious than a fifth-degree offense. I have no quibble with that. But I do have a bit of a problem with then Trooper Pohlabel indicating that that would make this a borderline prison term. That's not really accurate information to convey to a Defendant.

However, these misstatements are, in my opinion, akin to a police officer informing a suspect that the evidence against him is stronger than it actually is. That is, Trooper Pohlabel's mischaracterizations are but one factor bearing on whether Ms. Harvey's admissions regarding possession of heroin are suppressible or not.

This Court, upon evaluating the totality of circumstances, cannot conclude that Trooper Pohlabel's interrogation on the whole acted to overbear Ms. Harvey's will, thus rendering her confession involuntary. Ms. Harvey confessed—and this is important—confessed within two to three minutes of the commencement of the interrogation. Trooper Pohlabel did not use harsh or coercive language. His tone was even and nonthreatening throughout the encounter with Ms. Harvey. And Ms. Harvey, though she likely had recently used heroin, was coherent and her thinking was clear.

These conclusions in the Court's mind outweigh Trooper Pohlabel's inaccurate statements to Ms. Harvey so that when considering the totality of circumstances, it cannot be concluded that Ms. Harvey's will was overborne so that her statement and her statement admitting to possession of heroin was less than voluntary.

Again, I note that Ms. Harvey, again, within two to three minutes—

and you can look at the video, it happened very quickly—she made the initial denial and then Trooper Pohlabel went into and made the statements regarding, and some accurate statements, some statements perhaps not so accurate, he made those statements and then immediately thereafter Ms. Banks or Ms. Harvey indicated that she did possess the heroin.

Trooper Pohlabel, though some of the statements he made may have been inaccurate, was not overbearing; he was not harsh; he did not yell; he did not use other coercive tactics. And I cannot say when considering the inaccuracies as but one factor in the totality of circumstances, I cannot come to the conclusion that that one factor creates a situation where the admission by Ms. Harvey of her heroin possession was made in a less than voluntary way.

And based upon that, the Court will overrule the motion to suppress. And, of course, that also means since the statements are admissible then the drugs themselves are admissible.

(Hearing Tr. at 60-63).

{¶ 6} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."

(Internal citations omitted) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *see also State v. Greene*, 2d Dist. Montgomery No. 26138, 2015-Ohio-2060, ¶ 19.

{¶ 7} Here the facts, as set forth by Trooper Pohlabel, are undisputed. The issue Banks-Harvey raises is a legal one, to wit: whether based on those facts her confession to possessing heroin was involuntary. *See*, *e.g.*, *State v. Heisey*, 2015-Ohio-4610, 48 N.E.3d 157, ¶ 8 (2d Dist.) (recognizing that the voluntariness of a confession is a question of law subject to de novo review).

{¶ 8} "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id*. at 164. "Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger [a] totality of the circumstances analysis." *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). A confession is voluntary "absent evidence that [the defendant's] will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Jackson,* 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 20. *See also State v. Buk–Shul*, 2d Dist. Montgomery No. 23603, 2010–Ohio–3902, ¶ 9. The voluntariness test considers "the totality of all the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation." *Jackson* at ¶ 21. This includes factors like "the age,

mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements." *Id.*

{¶ 9} Banks-Harvey's argument on appeal focuses on the last factor mentioned above, namely the existence of coercion through threats or inducements. She contends her will was overborne when Pohlabel (1) threatened to obtain a warrant and subject her to a vaginal-cavity search if she did not confess, (2) threatened her with a third-degree felony evidence-tampering charge if she did not confess, (3) threatened to have her jailed for 48 hours if she did not confess, and (4) mentioned the possibility of her getting "dope sick" if she spent 48 hours in jail.

{¶ 10} In response, the State contends Pohlabel mentioned "dope sickness" out of compassion for Banks-Harvey. With regard to obtaining a warrant for a body-cavity search, the State contends he had probable cause to do so and informing Banks-Harvey of that fact was not improper. The State further asserts that it was not improper for Pohlabel to warn her about additional jail and prison time or an additional charge if she did not cooperate by confessing. The State appears to concede that Banks-Harvey could not have been charged with evidence tampering because Pohlabel did not know when she had concealed the drugs in her vagina. The State argues, however, that she still could have been charged with a third-degree felony for illegally conveying drugs onto the grounds of a correctional facility if Pohlabel had arrested her and the heroin had been discovered at the jail.

{¶ 11} Upon review, we conclude that the statements Pohlabel made to her were not sufficient to cause her free will to be overborne, resulting in an involuntary confession.

Having reviewed the record, including the audio and video recording, we see nothing about circumstances of Banks-Harvey's confession that is indicative of unlawful coercion. Pohlabel's questioning was brief, only two (2) or three (3) minutes. The trial court described his tone as "even," and Banks-Harvey appeared to be thinking clearly even if she was under the influence of something. She was 37 years old, had prior experience with law enforcement and had previously been charged with possession of heroin. The trooper did not use harsh or coercive language and his tone was not threatening. The only salient questions are whether any information supplied by Pohlabel amounted to threats or improper inducement, and if so, were they sufficient under the totality of circumstances to conclude the Appellant's will was overborne.

{¶ 12} Given the brevity of the encounter and the moderate tone of the trooper, we do not believe any of the trooper's communication amounted to threats sufficient to overcome Appellant's free will. That leaves only the question whether the communication could be characterized as improper inducement sufficient to overcome Appellant's voluntary choice and to coerce her to admit she possessed heroin. Admonitions to tell the truth are not coercive. *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989). "Similarly, assurances that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate a confession." *State v. Stringham*, 2d Dist. Miami No. 2002–CA–9, 2003-Ohio-1100, ¶ 16. A "suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " *Id.*, quoting *State v. Farley*, 2d Dist. Miami No. 2002–CA–2, 2002–Ohio–6192. We conclude the communications by the trooper in this case do not constitute

improper inducement and were insufficient to coercively overcome Appellant's voluntary admission that she possessed heroin.

{¶ 13} We note that we might apply a different analysis if this were a consent-to-search case. If Pohlabel's announcement to Banks-Harvey was that he would undoubtedly obtain a warrant and compel her to undergo a body-cavity search if she did not consent to a search for drugs inside her body, but he did not have probable cause for a warrant, his incorrect representation could vitiate the voluntariness of a subsequent consent for a search to be performed. On several occasions, this court has addressed the issue of coercing consent by threatening to obtain a warrant. In *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011 (July 25, 1997), for example, this court reasoned:

> Consent is involuntary if it is the product of coercion or duress applied to induce it. For example, if police seek permission to conduct a search, but upon being denied permission announce that they will obtain a warrant and conduct the search anyway, any consent to search that their statement induces is involuntary and ineffective to waive Fourth Amendment rights. * * * If the officers lacked probable cause to obtain a warrant, then the consent is a product of duress and is invalid to justify the search. However, the fruits of a search need not be suppressed if the police possessed probable cause sufficient for issuance of the warrant they threatened to obtain. * * *

*Id*. at *6.

{¶ 14} Similarly, in *State v. Berg*, 2d Dist. Montgomery No. 15313, 1996 WL 562799 (Oct. 4, 1996), this court reasoned:

It has been expressly held that if "in fact there were grounds for the issuance of a search warrant," then "the well founded advice of a law enforcement agent that absent a consent to search," a warrant can be obtained does not constitute coercion. *United States v. Faruolo* (2nd Cir.1974), 506 F.2d 490. This proposition rests upon the conclusion that the "threat" does not involve any deceit or trickery; but instead accurately informs the individual of his precise legal situation. LeFave, Search and Seizure, Third Edition. But this means that under the better view the police act at their peril in threatening to obtain a search warrant. It is not enough that their interest was made in good faith expectation that a warrant would issue, there must be probable cause.

*Id.* at *3.

{¶ 15} However, the case before us is not a voluntariness-of-consent case, it is a voluntariness-of-confession case. Although evaluation of the totality of the circumstances applies in both circumstances, the applicable case law, and even the standard of proof (clear and convincing as opposed to preponderance of the evidence) are different. Accordingly we apply the law and the standard applicable to voluntariness of a confession to conclude that the trial court was correct to overrule the motion to suppress.

{¶ 16} Banks-Harvey's assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Meagan D. Woodall
Amy Ferguson
Hon. Michael Tucker