[Cite as *In re C.M.R.*, 2018-Ohio-110.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: C.M.R.

:
:
:   Appellate Case No. 27519
:
:   Trial Court Case No. 2017-000735-01
:
:   (Appeal from Common Pleas Court-
:   Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of January, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} C.M.R. appeals from his adjudication of delinquency in the Montgomery County Court of Common Pleas, Juvenile Division, for an act that, if committed by an adult, would constitute the offense of rape of a person under the age of 13. In support of his appeal, C.M.R. challenges the trial court's decision overruling his motion to suppress statements he made to an investigating detective. C.M.R. also claims that he was denied his Sixth Amendment right to counsel and that his adjudication was not supported by sufficient evidence and was otherwise against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 12, 2016, the Warren County Sheriff's Department began to investigate allegations that fourteen-year-old C.M.R. had nine-year-old C.C. perform fellatio on him while the boys were in the woods behind C.C.'s grandfather's home in Waynesville, Ohio. C.M.R. occasionally spent time with C.C.'s family because C.M.R.'s father was in a relationship with C.C.'s mother. In conducting the investigation, Detective Brandi Carter performed a forensic interview with C.C. on July 14, 2016. During the interview, C.C. indicated that there were a few incidents where C.M.R. exposed his genitals and one incident where C.M.R. placed his penis in C.C.'s mouth.

{¶ 3} Following the forensic interview, Detective Carter contacted C.M.R.'s mother by telephone and asked to question C.M.R. regarding the allegations. Although C.M.R.'s mother initially indicated that she was going to get an attorney, she nevertheless called Detective Carter back and scheduled to meet with Carter at the sheriff's office on August

3, 2016. Thereafter, C.M.R. and his mother appeared at the sheriff's office as scheduled and spoke with Detective Carter.

{¶ 4} During the meeting, Detective Carter first spoke with C.M.R.'s mother about the investigation, the allegations, and the fact that C.M.R. could be charged with rape. Detective Carter also advised C.M.R.'s mother that C.M.R. was not obligated to submit to questioning and that she and C.M.R. were free to leave and speak to an attorney. Following this discussion, C.M.R.'s mother permitted Detective Carter to question C.M.R. without an attorney present. During the questioning, C.M.R., who was then 15 years old, admitted to putting his penis in C.C.s' mouth on one occasion while he and C.C. were playing outside.

{¶ 5} After Detective Carter completed her investigation, on August 15, 2016, a complaint was filed against C.M.R. in the Warren County Juvenile Court alleging one count of rape of a person less than 13 years of age in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. C.M.R. thereafter filed a motion to suppress the statements he made to Detective Carter during the August 3, 2016 interview. A hearing on the motion was held on December 5, 2016, during which the State presented the testimony of Detective Carter and the defense presented the testimony of C.M.R.'s mother. After taking the matter under advisement, the trial court overruled C.M.R.'s motion to suppress.

{¶ 6} On January 18, 2017, the case proceeded to trial. At trial, the State presented the testimony of C.C., C.C.'s mother, and Detective Carter. After the State rested its case, C.M.R. moved for an acquittal pursuant to Crim.R. 29 on grounds that the State failed to prove the venue and date of the offense as alleged in the complaint. C.M.R. also alleged the State failed to prove that he engaged in sexual conduct with C.C.

Following the parties' arguments, the trial court overruled the Crim.R. 29 motion and adjudicated C.M.R. a delinquent child for the charge of rape alleged in the complaint.

{¶ 7} Given that C.M.R. was a resident of Montgomery County, Ohio, the Warren County Juvenile Court ordered the case be transferred to the Montgomery County Juvenile Court for final disposition.[1]   On April 10, 2017, the Montgomery County Juvenile Court held a final disposition hearing and ordered that C.M.R. be committed to the legal custody of the Department of Youth Services for a minimum period of one year and a maximum period not to exceed C.M.R.'s attainment of the age of 21.   The court, however, suspended C.M.R.'s commitment on the condition that he abide by the terms of probation, which was ordered to last through March 22, 2018.   The trial court also ordered C.M.R. to be monitored by the court for an additional 18 months after his probation term ended.

{¶ 8} C.M.R. now appeals from his adjudication of delinquency, raising three assignments of error for review.

### First Assignment of Error

{¶ 9} C.M.R.'s First Assignment of Error is as follows:

[C.M.R.]'S FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION

AND FIFTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED

---

[1] R.C. 2151.271 provides, in relevant part, that "if the child resides in a county of the state and the proceeding is commenced in a juvenile court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence * * * after the adjudicatory, or dispositional hearing, for such further proceeding as required.   The court of the child's residence shall then proceed as if the original complaint had been filed in that court."

BECAUSE HIS STATEMENTS WERE INVOLUNTARILY INDUCED AND WITHOUT ADMINISTRATION OF THE NECESSARY *MIRANDA* RIGHTS AND WITHOUT THE BENEFIT OF AN ATTORNEY.

**{¶ 10}** Under his First Assignment of Error, C.M.R. challenges the trial court's decision overruling his motion to suppress the statements he made to Detective Carter during the August, 3, 2016 interview.   C.M.R. claims his statements should have been suppressed because he was: (1) not advised of his *Miranda* rights; (2) denied his right to counsel after his mother allegedly invoked the right on his behalf; and (3) involuntarily induced to speak with Detective Carter.

*Standard of Review*

**{¶ 11}** "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' "   *State v. Prater*, 2012-Ohio-5105, 984 N.E.2d 36, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994).   "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' "   *Id.*, quoting *Retherford*.

*Miranda Warnings*

**{¶ 12}** As noted above, C.M.R. initially claims that the statements he made to

Detective Carter during the August 3, 2016 interview should have been suppressed because Carter failed to administer *Miranda* warnings in violation of his Fifth Amendment right against self-incrimination. Although the record indicates that Carter did not administer *Miranda* warnings, we disagree with C.M.R.'s conclusion that this necessitated the suppression of his statements.

{¶ 13} " 'It is well-settled that many constitutional protections enjoyed by adults also apply to juveniles. One such constitutional protection is the privilege against self-incrimination.' " *In re R.L.*, 2014-Ohio-5065, 23 N.E.3d 298, ¶ 17 (2d Dist.), quoting *In re Haubeil*, 4th Dist. Ross No. 01CA2631, 2002-Ohio-4095, ¶ 9. (Other citation omitted.) The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution, which provides that no person "shall be compelled in any criminal case to be a witness against himself."

{¶ 14} "In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been followed." *In re L.G.*, 2017-Ohio-2781, 82 N.E.3d 52, ¶ 11 (2d Dist.), citing *State v. Earnest*, 2d Dist. Montgomery No. 26646, 2015-Ohio-3913, ¶ 21. "*Miranda* requires police to give a suspect certain prescribed warnings before custodial interrogation commences and provides that if the warnings are not given, any statements elicited from the suspect through police interrogation in that circumstance must be suppressed." *State v. Petitjean*, 140 Ohio App.3d 517, 523, 748 N.E.2d 133 (2d Dist.2000). Specifically, "police officers must warn a suspect, prior to questioning, that he or she has a right to remain silent and a right to the presence of an attorney."

(Citations omitted.) *L.G.* at ¶ 11. " 'After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present.' " *Id.*, quoting *Maryland v. Shatzer*, 559 U.S. 98, 104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010).

{¶ 15} Police, however, are not required to administer *Miranda* warnings to every person they question, even if the person being questioned is a suspect. *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997), citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). *Miranda* warnings are required only for custodial interrogations. *Id.*, citing *Mathiason* at 494. (Other citation omitted.) *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444.

{¶ 16} "An individual is in custody when there has been a formal arrest or a restraint of freedom of movement such that a reasonable man would believe that he is under arrest." *State v. Wenzler*, 2d Dist. Greene No. 2003-CA-16, 2004-Ohio-1811, ¶ 15, citing *Biros* at 440. Accordingly, " 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " *Biros* at 440, quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Mathiason* at 495. (Other citation omitted.)

{¶ 17} "The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether a custodial interrogation was conducted." (Citations omitted.) *L.G.*, 2017-Ohio-2781, 82 N.E.3d 52 at ¶ 13. "The inquiry whether

a person is subject to custodial interrogation is an objective question, focusing on how a reasonable person in the suspect's position would have understood the situation." (Citations omitted.) *Id.*

{¶ 18} The United States Supreme Court has recognized that, "[i]n some circumstances, a child's age 'would have affected how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave.' " *J.D.B. v. North Carolina*, 564 U.S. 261, 270, 271-272, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), quoting *Stansbury v. California*, 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). The Court held that, "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test." *Id.* at 277.

{¶ 19} In this case, we do not find that Detective Carter's interview with C.M.R. amounted to a custodial interrogation. Although the interview occurred at the sheriff's office, at no point did Detective Carter order C.M.R. or his mother to appear there for the interview. Rather, C.M.R.'s mother voluntarily brought C.M.R. to the sheriff's office after she discussed the matter over the phone with Detective Carter and voluntarily scheduled a time to meet.

{¶ 20} Furthermore, on the day of the interview, Detective Carter told C.M.R. and his mother that C.M.R. did not have to talk to her and that C.M.R. was free to leave and to speak with an attorney. Detective Carter left the door to the interview room open during the entire interview and advised C.M.R. and his mother that the outer door to the interview room was unlocked so that they could leave at any time. Detective Carter also told C.M.R. that there were no charges filed against him and that he would be going home

after the interview. While C.M.R.'s mother left in the middle of the interview, she did so voluntarily to make C.M.R. more comfortable and she waited outside the interview room. Moreover, the interview lasted only ten minutes and C.M.R. was never handcuffed or constrained in any way.

{¶ 21} Based on these circumstances, a reasonable 15-year-old in C.M.R.'s position would not have believed he was under arrest or otherwise deprived of his freedom so as to amount to a custodial interrogation. Given that there was no custodial interrogation, *Miranda* warnings were not required. Accordingly, Detective Carter's failure to administer *Miranda* warnings does not warrant suppression of the statements C.M.R. made during the August 3, 2016 interview.

*Fifth Amendment Right to Counsel*

{¶ 22} C.M.R. next claims that his statements should have been suppressed because Detective Carter continued to interview him even though his mother allegedly invoked his Fifth Amendment right to counsel. This argument fails for multiple reasons.

{¶ 23} First, the Fifth Amendment right to counsel only attaches when the defendant is subjected to a custodial interrogation. *State v. Guysinger*, 4th Dist. Ross No. 11CA3251, 2012-Ohio-4169, ¶ 13, citing *State v. Boyd*, 4th Dist. Adams No. 02CA744, 2003-Ohio-983, ¶ 7 ("In a non-custodial interrogation, law enforcement officers do not need to give *Miranda* warnings and no right to counsel attaches."). A defendant has no right to counsel under the Fifth Amendment if he or she is not in custody. *State v. Spitler*, 75 Ohio App.3d 341, 353, 599 N.E.2d 408 (10th Dist.1991), citing *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) and *State v. Wiles*, 59

Ohio St.3d 71, 83, 571 N.E.2d 97 (1991).

{¶ 24} As previously discussed, we have already determined that C.M.R. was not in custody during the interview with Detective Carter and was not subjected to a custodial interrogation. As a result, C.M.R.'s Fifth Amendment right to counsel did not attach during the August 3, 2016 interview in question.

{¶ 25} That said, even if C.M.R.'s Fifth Amendment right to counsel had attached during the interview, the right is not violated unless a defendant "unambiguously invoked his right to counsel." *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 32, citing *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

{¶ 26} In *State v. Baker*, 2d Dist. Champaign No. 2004 CA 19, 2005-Ohio-46, we explained that:

> A request for an attorney must be clear and unambiguous such that a reasonable police officer in the circumstances would understand the statement to be an invocation of the right to counsel. * * * The Supreme Court of Ohio has held that the statement "I think I need a lawyer" was not an unequivocal assertion of the right to counsel. *State v. Henness*, [79 Ohio St.3d 53, 63, 679 N.E.2d 686 (1997)]. "Don't I supposed to have a lawyer present" has also been found to be ambiguous. *State v. Brown*, [100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 19].

> "If a suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." [*Davis* at 461-62; *Brown* at ¶ 18]. Moreover, the officers have no obligation

to ask clarifying questions to ascertain if the suspect is attempting to invoke his right to counsel. *Davis*, supra.

*Baker* at ¶ 33-34.

{¶ 27} In this case, there is nothing in the record indicating that C.M.R. or his mother unambiguously invoked the right to counsel. Immediately prior to C.M.R.'s interview, C.M.R.'s mother met with Detective Carter and expressed her uncertainty as to whether she should retain an attorney before allowing Carter to question her son. Although Detective Carter told C.M.R.'s mother multiple times that they were free to leave and speak with an attorney, C.M.R.'s mother ultimately decided to allow Detective Carter to interview C.M.R. without an attorney present. Based on the recorded conversation between Detective Carter and C.M.R.'s mother, a reasonable officer in Carter's position would not have understood the conversation as invoking C.M.R.'s right to counsel.

{¶ 28} Because C.M.R.'s Fifth Amendment right to counsel did not attach and because there was no unambiguous invocation of said right, the statements C.M.R. made during the interview with Detective Carter are not suppressible.

*Voluntariness of Statements*

{¶ 29} C.M.R. also argues that his statements to Detective Carter should have been suppressed because both his statements and his mother's permission for him to speak with Detective Carter were involuntarily induced by coercive police conduct. We once again disagree with C.M.R.'s claim.

{¶ 30} "Regardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to

exclusion." *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 30, citing *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 11. "A confession is voluntary 'absent evidence that [the defendant's] will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.' " *State v. Banks-Harvey*, 2d Dist. Montgomery No. 26786, 2016-Ohio-4715, ¶ 8, quoting *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 20. (Other citation omitted.)

{¶ 31} " '[S]pecial caution' should be given to a review of a juvenile's pretrial statement, admission or confession." *In re R.L.*, 2014-Ohio-5065, 23 N.E.3d 298 at ¶ 24, quoting *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 19. (Other citations omitted.) "Care must be taken to make sure that the juvenile's statement was not the product of coercion or suggestion and that it was not elicited due to the juvenile's ignorance of his rights or as the result of adolescent fantasy, fright, or despair." (Citations omitted.) *Id.* at ¶ 25.

{¶ 32} "In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement." *In re Watson*, 47 Ohio St.3d 86, 548 N.E.2d 210 (1989), paragraph one of the syllabus, citing *State v. Edwards*, 49 Ohio St.2d 31, 40-41, 358 N.E.2d 1051 (1976), *vacated on other grounds*, *Edwards v. Ohio*, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

{¶ 33} "[A]ppropriate additional factors in considering the totality-of-the-circumstances are whether the juvenile, either before or during the questioning, had the

opportunity to consult with an adult interested in his welfare; whether the police prevented the juvenile from consulting with a concerned adult; whether the police frustrated an adult's attempt to confer with the juvenile, and the presence of police trickery and deceit." (Citations omitted.) *In re R.L.* at ¶ 25. However, "no one factor is per se coercive without reference to its factual context; coercion can only be defined relative to the characteristics of the individual." (Citations omitted.) *Id.*

{¶ 34} Here, Detective Carter questioned C.M.R. for only ten minutes. Prior to the questioning, Detective Carter told C.M.R. that he did not have to talk to her, that he was free to leave the interview at any time, and that he was free to speak with an attorney before being questioned. C.M.R.'s mother was present during the first half of the interview, but chose to leave after C.M.R. indicated that he would be more comfortable speaking with only Detective Carter about the incident in question. The door to the interview room was left open, the outer door was unlocked at all times, and C.M.R.'s mother waited outside the interview room. Detective Cater never prevented C.M.R. from consulting with his mother nor made any promises, threats, or inducements to get C.M.R. to speak with her. Moreover, at the time of the interview, C.M.R. was not a small child, but a 15-year-old young man.

{¶ 35} In an effort to establish that C.M.R. had cognitive limitations that prevented him from understanding Detective Carter's questions, C.M.R. submitted medical records showing that he was diagnosed with Attention Deficit Hyperactivity Disorder. C.M.R. also submitted school records showing that he was taking Individualized Education Program classes. These records, however, do not establish that C.M.R. was unable to understand and participate in the interview performed by Detective Carter. Rather, the

records indicate that C.M.R.'s ability to focus had improved since 2015, and that he struggles with math and reading skills, which he was not required to use during the interview in question. Moreover, the video recording of C.M.R.'s interview with Detective Carter does not demonstrate that C.M.R. had any difficulty understanding or answering Detective Carter's questions. Rather, C.M.R. was alert, attentive, and responsive during the entire interview. In addition, at no point did C.M.R.'s mother advise Detective Carter that C.M.R. had cognitive limitations or express any concern with C.M.R.'s ability to answer Detective Carter's questions. Rather, C.M.R.'s mother was comfortable leaving the interview room and having Detective Carter question C.M.R. without her present.

{¶ 36} While C.M.R.'s mother testified that C.M.R. had no prior experience with the criminal justice system, this single factor does not render the interview coercive in nature. Under the facts of this case, Detective Carter did not act coercively, employ deprivation or inducement, play on C.M.R.'s fears or inexperience, or prevent the involvement of his mother while he was being questioned. Therefore, even though C.M.R. had no prior experience with law enforcement or the criminal justice system, we find no basis to conclude that the trial court erred in finding that his statements were voluntarily made and not suppressible.

{¶ 37} Although irrelevant to C.M.R.'s statements, we also note that there is no indication that the permission given by C.M.R.'s mother to allow Detective Carter to question C.M.R was involuntarily induced. The evidence establishes that C.M.R.'s mother was well informed about her son's situation before allowing him to be questioned. Detective Carter spoke with C.M.R.'s mother for approximately 35 minutes about the investigation and advised C.M.R.'s mother that the investigation would eventually be

submitted to the prosecutor's office and that C.M.R. could be charged with rape as a juvenile. In addition, Detective Carter advised C.M.R's mother multiple times that she was free to speak with an attorney and to decline Carter's request to question her son. Furthermore, the video recording of their discussion establishes that Detective Carter did not use any coercive, manipulative tactics to induce C.M.R.'s mother to grant Carter permission to question her son. Therefore, C.M.R.'s claim to the contrary lacks merit.

{¶ 38} For all the foregoing reasons, the trial court did not err in overruling C.M.R.'s motion to suppress the statements he made to Detective Carter during the August 3, 2016 interview. Accordingly, C.M.R.'s First Assignment of error is overruled.


**Second Assignment of Error**

{¶ 39} C.M.R.'s Second Assignment of Error is as follows:

[C.M.R.]'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED.

{¶ 40} Under his Second Assignment of Error, C.M.R. contends that his Sixth Amendment right to counsel was violated when Detective Carter interviewed him without an attorney present.

{¶ 41} The Supreme Court of Ohio has "recognized that the right to counsel 'flows to the juvenile through the Due Process Clause of the Fourteenth Amendment, not the Sixth Amendment.' " *State v. Bode,* 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 15, quoting *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79. (Other citation omitted.) "Due process requires that a juvenile facing commitment have the right to counsel at every stage of the proceedings." *In re B.T.*, 2d Dist. Clark No. 2009 CA 123, 2010-Ohio-2829, ¶ 13, citing *In re C.S.* at ¶ 78.

{¶ 42} "[T]he General Assembly acknowledged the importance of counsel in juvenile proceedings by codifying a juvenile's constitutional right to appointed counsel through R.C. 2151.352, thus providing 'a statutory right to appointed counsel that goes beyond constitutional requirements.' " *Bode* at ¶ 15, quoting *In re C.S.* at ¶ 83. R.C. 2151.352 provides, in relevant part, that: "A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152 of the Revised Code."

{¶ 43} "The term 'proceedings' as used in R.C. 2151.352 means court proceedings, and in that context, a child is statutorily entitled to representation by legal counsel upon the filing of a complaint in juvenile court or upon initial appearance in the juvenile court." *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, ¶ 27. "Thus, the right of a juvenile to counsel pursuant to R.C. 2151.352 attaches when the jurisdiction of a juvenile court is properly invoked." *Id.* "[A]n interrogation that occurs prior to the filing of a complaint alleging delinquency or prior to an appearance in juvenile court is not a proceeding that falls within the scope of R.C. Chapter 2151." *Id.* at ¶ 23.

{¶ 44} In this case, the record is clear that at the time of C.M.R.'s interview with Detective Carter, no complaint had been filed against C.M.R. and C.M.R. had not made an appearance in juvenile court. Accordingly, C.M.R.'s statutory and constitutional right to counsel had not yet attached, rendering his Second Assignment of Error meritless.

{¶ 45} C.M.R.'s Second Assignment of Error is overruled.


**Third Assignment of Error**

{¶ 46} C.M.R.'s Third Assignment of Error is as follows:

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN [C.M.R.]'S [ADJUDICATION] FOR RAPE.

{¶ 47} Under his Third Assignment of Error, C.M.R. contends that his juvenile adjudication for rape was not supported by sufficient evidence and was otherwise against the manifest weight of the evidence.

{¶ 48} When considering whether a juvenile's adjudication is supported by sufficient evidence or is against the manifest weight of the evidence, this court applies the same standard of review that is applied in adult criminal cases. *In re C.M.*, 12th Dist. Butler No. CA2003-03-063, 2004-Ohio-1927, ¶ 10, citing *In re Washington*, 81 Ohio St.3d 337, 339, 691 N.E.2d 285 (1998); *In re L.W.*, 5th Dist. Muskingum No. CT2014-0033, 2015-Ohio-267, ¶ 22.

{¶ 49} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 50} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 51} " 'Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.' " *State v. Flores-Lopez*, 2d Dist. Montgomery No. 26964, 2016-Ohio-7687, ¶ 26, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. (Other citations omitted.) "Consequently, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 52} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of

particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Accordingly, "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

**{¶ 53}** In this case, C.M.R. was adjudicated a juvenile delinquent for the commission of an act that, if committed by an adult, would have been the offense of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. R.C. 2907.02(A)(1)(b) prohibits a person from engaging in non-spousal "sexual conduct" with another when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.01(A) defines "sexual conduct" to include "fellatio * * * between persons regardless of sex[.]" The act of " '[f]ellatio is committed by touching the male sex organ with any part of the mouth.' " *State v. Hudson*, 2d Dist. Montgomery No. 22793, 2009-Ohio-2776, ¶ 42, citing *State v. Long*, 64 Ohio App.3d 615, 618, 582 N.E.2d 626 (9th Dist.1989).

**{¶ 54}** The victim, C.C., who was ten years old at the time of trial, testified that C.M.R., who was then fifteen years old, put his penis in C.C's mouth while the boys were playing in the woods behind C.C.'s grandfather's home in Waynesville, Ohio. In addition, Detective Carter testified that during her August 3, 2016 interview with C.M.R, C.M.R. admitted to putting his penis in C.C.'s mouth on one occasion because he was curious

what it would feel like.

{¶ 55} C.M.R. does not take issue with the aforementioned testimony or challenge the State's evidence supporting the material elements of rape, i.e., sexual conduct with a non-spouse under the age of thirteen. Rather, C.M.R. contends his adjudication for rape is not supported by sufficient evidence and is against the manifest weight of the evidence because the State failed to establish the venue and date of the rape offense as alleged in the complaint.

{¶ 56} "Although venue is not a material element of a charged offense, the prosecution must nevertheless prove it." *State v. Richardson*, 2016-Ohio-8081, 75 N.E.3d 831, ¶ 25 (2d Dist.), citing *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). "However, venue need not be proved in express terms, so long as it is established by all the facts and circumstances in the case." *Id.*, citing *State v. Gribble*, 24 Ohio St.2d 85, 263 N.E.2d 904 (1970), paragraph two of the syllabus. "Venue is proper in the county where the offense or any element of the offense was committed." *Id.*, citing R.C. 2901.12(A). "Trial courts have broad discretion to determine the facts that would establish venue." *Id.*, citing *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 144.

{¶ 57} The complaint filed against C.M.R. alleged that the offense occurred in Warren County, Ohio. At trial, C.C. specifically testified that the incident with C.M.R. occurred in the woods behind his grandfather's home in Waynesville, Ohio. C.C.'s mother also testified that C.C.'s grandfather lived in Waynesville, Ohio. Detective Carter further testified that C.M.R. admitted the incident in question took place at C.C.'s grandfather's home, which Carter specified was in "the Village of Waynesville, Warren

County, Ohio." Trial Trans. (Jan. 18, 2017), p. 64-65. All the foregoing testimony indicates that the sexual conduct at issue took place in Warren County, Ohio. Accordingly, the State sufficiently established venue in Warren County and the weight of the evidence supports such a finding.

{¶ 58} As for the date of the rape offense, " '[o]rdinarily, precise times and dates are not essential elements of offenses.' " *State v. Lackey*, 2015-Ohio-5492, 55 N.E.3d 613, ¶ 65 (2d Dist.), quoting *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). " 'Proof of the offense on or about the alleged date is sufficient to support a conviction even where evidence as to the exact date of the offense is in conflict.' " *Richardson* at ¶ 22, quoting *State v. S.S.*, 10th Dist. Franklin No. 13AP-1060, 2014-Ohio-5352, ¶ 39. (Other citations omitted.) " 'The state's only responsibility is to present proof that the offenses alleged in the indictment occurred reasonably within the time frame alleged.' " *Id.* " 'The exact date is not essential to the validity of the conviction and the failure to prove that is of no consequence.' " *Id.*

{¶ 59} The complaint filed against C.M.R. alleged that the rape offense occurred on or near November 25, 2015. At trial, C.C. initially testified that the incident with C.M.R. happened in 2014 or 2015. However, C.C. later clarified that he was in the third grade when the incident happened and noted that his third grade school year took place during 2015 and 2016. C.C. thereafter confirmed the incident with C.M.R. occurred in 2015. He also testified that the incident occurred when there were leaves on the ground and in the trees and that the temperature was cold enough to wear "a hoodie or something." Trial Trans. (Jan. 18, 2017), p. 47. However, C.C. also testified that the incident occurred after Christmas and a couple weeks after Valentine's Day. C.C. further testified that the

incident might have occurred during the spring, and then associated spring with the month of February.

{¶ 60} C.C.'s mother testified that the last time C.C. and C.M.R. were together at her father's home in Waynesville was during the last two weekends of November 2015. After that, C.C.'s mother testified the boys were together only one other time when they celebrated Christmas in Kentucky with the family of C.M.R.'s father. She further testified that C.C. told her about the incident with C.M.R. in April 2016, and that in May 2016, C.M.R. sent her a text message apologizing for his actions. Detective Carter also testified that during her August 3, 2016 interview with C.M.R., C.M.R. told her that he was not sure of the exact timeframe of the incident with C.C., but that he believed it could have occurred around Thanksgiving.

{¶ 61} Although there was some conflicting testimony provided by C.C., who again was only ten years old at the time of trial, when considering all the testimony and reasonable inferences, the trial court as finder of fact could have reasonably concluded that the incident took place sometime near the timeframe alleged in the complaint. In other words, we do not find that the trial court created a manifest miscarriage of justice in finding that the rape offense occurred on or near November 25, 2015. Accordingly, such a finding is not against the manifest weight of the evidence.

{¶ 62} Since it is not patently apparent that the trial court lost its way in finding that the offense occurred in Warren County, Ohio, on or near November 25, 2015, the trial court's delinquency adjudication is not against the manifest weight of the evidence. The trial court's adjudication is also necessarily supported by sufficient evidence, as a rational trier of fact could find that the venue, timeframe, and the essential elements of rape were

proven beyond a reasonable doubt.

**{¶ 63}** C.M.R.'s Third Assignment of Error is overruled.

## Conclusion

**{¶ 64}** Having overruled all three assignments of error raised by C.M.R., the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Ben M. Swift
Hon. Nick Kuntz