[Cite as *State v. Brunson*, 2016-Ohio-8519.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-P-0004** |
| RYAN A. BRUNSON, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2015 CR 00456.

Judgment: Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Joseph F. Gorman,* Gorman, Malarcik, Pierce, Vuillemin & Locascio, The Gothic Building, 54 East Mill Street, Suite 400, Akron, OH 44308 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} The state of Ohio appeals from the judgment of the Portage County Court of Common Pleas, granting Ryan A. Brunson's ("appellee") motion to suppress in a case of alleged sexual assault. We reverse the trial court's judgment and remand the matter for further proceedings.

{¶2} On June 30, 2015, appellee was indicted by the Portage County Grand Jury on two counts of rape, in violation of R.C. 2907.02(A)(2), felonies of the first

degree, and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1), felonies of the fourth degree. Appellee entered pleas of not guilty to all charges and later moved to suppress any and all statements and evidence resulting from his interrogation by police.

{¶3} A suppression hearing was held on November 6, 2016. Testifying for the state were Ed Samec, Chief of the Hiram Police; Officer Hoyle West, formerly of the Hiram Police; and Steve Chapman, Director of Campus Safety at Hiram College. Chief Samec had interrogated appellee on March 23, 2015, and obtained a written statement. Mr. Chapman questioned appellee again on March 25, 2015, and obtained a further written statement. A DVD of the interrogation of appellee by Chief Samec was entered into evidence for the trial court to review in chambers.

{¶4} On December 31, 2015, the trial court filed its judgment entry, granting the motion to suppress. The trial court found the March 23, 2015 interrogation by Chief Samec had been custodial, and that appellee was not properly Mirandized. It further found that Mr. Chapman was acting as an agent of the police when he spoke with appellee and obtained his statement March 25, 2015. On January 6, 2016, the state noticed this appeal, having certified pursuant to Crim.R. 12(K) and R.C. 2945.67(A) that, as a result of the granting of the suppression motion, its case was too weak to prosecute.

{¶5} "'An appellate court's review of a motion to suppress presents a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, * * *. In reviewing the trial court's findings of fact, an appellate court must give due weight to inferences drawn from those facts by the trial court because the trial court is in the best

position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, * * * appeal not allowed (1996), 77 Ohio St. 3d 1488, * * *. Accordingly, an appellate court reviews a trial court's findings of fact only for clear error. *State v. Russell* (1998), 127 Ohio App.3d 414, 416, * * *. A trial court's legal conclusions, however, are reviewed by an appellate court de novo. *Id.* at 416.' *State v. Yeager*, 9th Dist. Summit Nos. 21091, 21112, 21120, 2003-Ohio-1808, ¶5." (Parallel citations omitted.) *State v. Guzzi*, 11th Dist. Lake No. 2014-L-101, 2015-Ohio-4426, ¶16.

**{¶6}** The following relevant facts are taken from the transcript of the suppression hearing, and the DVD of the interrogation.

**{¶7}** At the suppression hearing, Officer West testified he was the road officer for the Hiram Police Department on the evening of March 23, 2015, when he received a report of a sexual assault at East Dormitory, Hiram College. After speaking with the alleged victims, Officer West identified appellee as the suspect. Officer West testified he contacted Chief Samec to interview appellee. On direct examination, Officer West testified he did not know how appellee arrived at the police station, but that he came voluntarily.

**{¶8}** On cross examination, Officer West admitted he could not find appellee initially, and had the latter's roommate contact him at the room of another student. Under repeated questioning by defense counsel, Officer West denied vehemently that he actually drove appellee to the police station that night.

**{¶9}** Chief Samec personally conducted the interrogation of appellee in the squad room of the Hiram Police Department. He conducted the interrogation in full

uniform, and gun belt. Chief Samec admitted he did not know how appellee arrived at the station, or whether Officer West had previously handcuffed him. The squad room has a camera to record interviews, which is activated by movement. Nevertheless, Chief Samec had to admit that about one-half of the interrogation of appellee was unrecorded. Chief Samec testified he discussed the department's waiver-of-Miranda-rights form with appellee 10 to 15 minutes into the interrogation, and that appellee signed it. The form is in evidence. This discussion of the form and its signature are not contained on the DVD of the interview, even though the time noted on the form by Chief Samec *was* within the recorded portion of the interrogation. Chief Samec admitted Steve Chapman entered the squad room following the interview. He agreed with defense counsel that Mr. Chapman may have congratulated the chief on his interrogation techniques. He denied recollecting whether he and Mr. Chapman discussed further proceedings which the state and/or the college might take against appellee.

{¶10} At the suppression hearing, Steve Chapman, the campus safety director, testified he arrived at the police station about a quarter of the way through Chief Samec's interrogation of appellee, and that he watched the interrogation on a monitor outside the squad room. He testified he only entered the squad room to issue appellee a no contact order from the college at the end of the interview. He denied recollecting congratulating the chief on the interrogation. He denied discussing with the chief what further proceedings the state and the college would be taking against appellee. He admitted he did not Mirandize appellee when interviewing him March 25, 2015, and

4

obtaining his statement for the college. He admitted being an auxiliary Hiram police officer, but denied he acted in that capacity during the investigation of appellee.

{¶11} In its judgment entry granting the suppression motion, the trial court made the following observations regarding events depicted on the DVD of the interrogation. It noted the discrepancy between the time the waiver of Miranda rights was allegedly administered as revealed by the statement itself, and the fact that event should be on the DVD, but is not. The trial court noted a strong police presence throughout the interrogation, with Mr. Chapman walking in and out of the room several times. It noted that Officer West on several occasions seated himself next to appellee, in what the trial court found to be "a demonstration of police dominance, wherein a reasonable person would not feel free to walk away." It noted that Chief Samec and Mr. Chapman did discuss further actions to be taken following the interrogation, and that Mr. Chapman did congratulate the chief on his interrogation techniques. It noted that Chief Samec actually crossed out items written by appellee, and coached appellee on what to write.

{¶12} On appeal, the state assigns three errors. We shall address the state's first two assignments of error together. They provide, respectively:

{¶13} "[1.] As law enforcement advised Brunson of his *Miranda* rights before conducting a non-custodial interview, the trial court erred in granting Brunson's motion to suppress on improper *Miranda* grounds.

{¶14} "[2.] The trial court erred in granting Brunson's motion to suppress because under the totality of the circumstances, Brunson's statements to law enforcement were voluntary."

5

**{¶15}** Under its first assignment of error, the state argues that a review of the DVD reveals the interrogation of appellee was non-custodial, and that the Miranda-waiver form proves appellee was properly advised of, and waived, his Miranda rights. Under its second assignment of error, the state argues that any changes to the written statement suggested or made by Chief Samec were trivial.

**{¶16}** Only a custodial interrogation triggers the need for a *Miranda*-rights warning. *Berkemer v. McCarty*, 468 U.S. 420 (1984). The fact that a suspect is interviewed at a police station does not, unto itself, require officers to issue *Miranda* warnings. *State v. Mason*, 82 Ohio St.3d 147,153 (1998). Rather, the inquiry into whether an interrogation was custodial requires a court to consider how a reasonable person in the suspect's position would have understood the situation. *Berkemer, supra,* at 442. "The ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). In this case, we conclude appellee was not in custody during the interview.

**{¶17}** First of all, we recognize that only part of the interview was preserved due to an error in record keeping. Nevertheless, the flow and tone of the surviving portion of the interview, which was approximately 45 minutes long, demonstrates appellee was neither formally arrested nor subject to the restraints comparable to those of a formal arrest.

**{¶18}** Although the interview took place at the police department, amongst uniformed officers, the environment and nature of the exchanges between appellee and Chief Samec, the interviewing officer, was casual and conversational throughout. We

6

recognize the transcript of the hearing indicates the Chief was in full uniform with his gun belt. A review of the video demonstrates, however, that Chief Samec conducted the interview in what appears to be plain clothes. The Chief's attire, in conjunction with the non-confrontational nature of the dialogue, fostered an atmosphere that was reasonably relaxed.

{¶19} Further, the interview took place in the department's "squad room," an informal area where officers complete their paperwork. The door to the squad room remained open throughout the interview. Appellee was left alone for lengthy periods of time with the door open while he prepared his statement. Appellee was never handcuffed or arrested and neither the Chief nor any other officer expressed any intention to arrest him. Indeed, at the end of the interview, Chief Samec simply stated he *may* contact appellee again in the future.

{¶20} Moreover, Chief Samec did not make any threats or promises to appellee in order to obtain his cooperation. Appellee arrived at the station voluntarily and was never told he could not leave the interview. After reading appellee's statement, the Chief advised him he had some additional questions; he also advised appellee that "you don't have to answer any more questions." Appellee nevertheless continued to voluntarily cooperate, answering the Chief's questions to help clarify the statement.

{¶21} Appellee notes that, in the course of asking additional questions relating to the statement, that Chief Samec made changes to or edited appellee's statement. The trial court made a similar determination in its "conclusion[s] of law." A review of this portion of the interview, however, demonstrates the Chief made no such changes. The Chief asked how long appellee penetrated the victim, to which appellee responded no

7

longer than three seconds. He then questioned appellee's written statement insofar as it provided "I attempted to put my finger in [the victim's] vagina." The Chief questioned appellee's phraseology, i.e., whether appellee merely attempted the sexual act or whether he succeeded. The Chief pointed out that, earlier in the interview, appellee admitted to the act. Appellee, without argument, changed the written statement using the word "proceeded," in lieu of "attempted."

{¶22} Moreover, appellee, like the trial court, places emphasis on the fact that Chief Samec and Mr. Chapman had a conversation, after appellee left the department, about what might follow in the case. Mr. Chapman had served a no-contact order on appellee and disclosed, to the Chief, expulsion proceedings would likely be initiated. Chief Samec noted that he did not want the victim and other witnesses facing appellee in a potential administrative proceeding until the criminal investigation was complete. This conversation, viewed objectively, does not indicate the Hiram Police Department was interested in utilizing the Director of Safety for the college as an instrument to aid in the investigation. Rather, the Chief's statement appears to reflect a concern for the victim and preserving the integrity of the investigation.

{¶23} Given the foregoing facts, we hold appellee voluntarily agreed to be interviewed by the Hiram Police Department, relating to certain allegations against him, in a non-custodial setting. And neither the location of the interview nor the heightened police presence undermine this conclusion. As the United States Supreme Court has aptly emphasized:

{¶24} "[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a * * * court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any

8

interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." *Mathiason*, *supra*, at 495.

{¶25} There was no such restriction on appellee's freedom in this case. Thus, even if the *Miranda* waiver in this case was flawed, suppression of appellant's statement was improper as a matter of law because the interview did not rise to the level of a custodial interrogation.

{¶26} The state's first and second assignments of error have merit.

{¶27} Appellant's third assignment of error provides:

{¶28} "The trial court erred in granting Brunson's motion to suppress as no constitutional violation occurred warranting an application of the derivative evidence rule."

{¶29} Although our disposition of appellant's first and second assignments of error are dispositive of the instant appeal, we shall consider the state's third assignment of error as it could have some substantive import in the proceedings that follow this appeal.

{¶30} The trial court determined that Mr. Chapman was working in concert with and as an agent of police when appellee gave his March 25, 2015 statement. The basis for this conclusion appears to be Mr. Chapman's presence and interaction with Chief

9

Samec during the original interview. Because the trial court determined the original interview involved a custodial interrogation during which appellee was not properly Mirandized, the court ultimately suppressed the statement to Mr. Chapman as a "fruit of the poisonous tree."

**{¶31}** Preliminarily, given our disposition of appellant's first and second assignments of error, the derivative evidence rule is clearly inapplicable to this case. Moreover, Mr. Chapman's interaction with Chief Samec after the original interview was insufficient to render him an agent of the police.

**{¶32}** Mr. Chapman testified he, as a campus safety director for a private college, is not a law enforcement officer. He testified he has no arrest powers, is not commissioned, and his duties include enforcing campus policy as well as addressing "parking issues." Even though Mr. Chapman is an auxiliary police officer for Hiram Police Department, he testified he was not acting in that capacity at the time he took appellee's statement. He further testified that his duties as an auxiliary officer involve security detail for community events and college football games.

**{¶33}** Finally, although Mr. Chapman and Chief Samec briefly discussed appellee's interview after he left the station, there is nothing to suggest the Chief solicited Mr. Chapman to obtain an additional statement for use in the criminal investigation. Rather, Mr. Chapman requested appellee to give a statement relating to a possible violation of campus policy regarding sexual misconduct. Appellee agreed; arrived at Mr. Chapman's office of his own volition; and provided a voluntary statement. The record is devoid of any evidence that appellee was detained when he provided the statement. The evidence demonstrates Mr. Chapman was acting in an independent

10

capacity as the Director of Safety for Hiram College when he took appellee's statement. Accordingly, we hold the trial court erred in concluding Mr. Chapman was acting as an agent for the state and, by implication, erred in concluding appellee's statements during this interview were inadmissible.

{¶34} The state's final assignment of error has merit.

{¶35} The judgment of the Portage County Court of Common Pleas is reversed and the matter is remanded for further proceedings.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶36} I respectfully dissent.

{¶37} In its judgment entry granting the suppression motion, the trial court made the following observations regarding events depicted on the DVD of the interrogation. It noted the discrepancy between the time the waiver of Miranda rights was allegedly administered as revealed by the statement itself, and the fact that event should be on the DVD, but is not. The trial court noted a strong police presence throughout the interrogation, with Mr. Chapman walking in and out of the room several times. It noted that Officer West on several occasions seated himself next to Mr. Brunson, in what the trial court found to be "a demonstration of police dominance, wherein a reasonable person would not feel free to walk away." It noted that Chief Samec and Mr. Chapman

11

did discuss further actions to be taken following the interrogation, and that Mr. Chapman did congratulate the chief on his interrogation techniques. It noted that Chief Samec actually crossed out items written by Mr. Brunson, and coached Mr. Brunson on what to write.

**{¶38}** "The requirement that police administer *Miranda* warnings is triggered only when interrogations are custodial in nature. *State v. Lynch*, 98 Ohio St. 3d 514, 2003-Ohio-2284,* * *, ¶47 (citation omitted). Custodial interrogation means 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' *Miranda v. Arizona*, 384 U.S. 436, 444, * * * (1966).

**{¶39}** "In determining whether an individual is in custody for purposes of *Miranda*, the court considers 'the circumstances surrounding the interrogation' and whether, under those circumstances, 'a reasonable person (would) have felt he or she was not at liberty to terminate the interrogation and leave.' *Thompson v. Keohane*, 516 U.S. 99, * * * (1995). A non-custodial interrogation becomes custodial when there is a 'formal arrest or restraint on freedom of movement' similar to that of a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, * * *, (1983) (citation omitted). A determination of whether an interrogation is custodial or non-custodial depends on the objective circumstances of the interrogation, not the subjective views held by either the officer or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 * * * (1994)." (Parallel citations omitted.) *Guzzi*, *supra*, at ¶17-18.

**{¶40}** In determining whether a person was in custody for the purposes of *Miranda*, courts must consider the totality of the circumstances. *In re J.S.*, 3rd Dist. Marion No. 9-15-26, 2016-Ohio-255, ¶13.

**{¶41}** This court has long held that at a hearing on a motion to suppress, the trial court functions as the trier of fact and is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. On review, an appellate court must accept the trial court's findings of fact if they are supported by some competent and credible evidence. *State v. Frye*, 11th Dist. Ashtabula No. 2007-A-0023, 2007-Ohio-6941 ¶17-18 (internal citations omitted). The majority disregards such precedent in its reversal of the trial court. Inasmuch as we must defer to the trial court's determination of the facts when reviewing suppression proceedings, and considering the totality of the circumstances surrounding Mr. Brunson's interrogation by Chief Samec, this writer does not feel the trial court erred in determining both that the interrogation was custodial, and that Mr. Brunson was not properly Mirandized. In arguing the interrogation was not custodial, and that Mr. Brunson properly waived his Miranda rights, the majority looks at each item of evidence discretely and cherry picks the facts as if they were the trial court, disregarding the standard set forth in *Frye*. The state points out, and the majority adopts the position, that most of the changes made by Chief Samec to the written statement were minor. But there were several. The state ignores the discrepancies between the testimony the trial court heard at hearing, and what appears on the DVD. Mr. Chapman testified he only entered the squad room at the end of the interrogation. The DVD shows he entered several times. Both the chief and Mr. Chapman could not recollect strategizing together about the further conduct of

13

their investigations against Mr. Brunson. As the trial court noted, they clearly did have such a discussion. The state ignores the fact that the signing of the waiver form should appear on the DVD, according to the time written on it for its administration by the chief, and does not.

{¶42} In its brief, the state emphasizes the mere fact that a person is a suspect, and is interrogated at a police station, does not establish that an interrogation was custodial. This is an accurate statement of the law. *State v. Tate*, 7th Dist. Mahoning No. 07 MA 130, 2008-Ohio-3245, ¶44, 47. However, these were not facts on which the trial court particularly relied in this case. Rather, the trial court noted the strong police presence in the squad room during the interrogation, and its conclusion that Mr. Brunson was being physically and verbally dominated. These are circumstances which may be considered in determining whether an interrogation was custodial. *Id.* at ¶51-52. The trial court further found that nobody, under the totality of the circumstances presented, would have felt free to leave. There is evidence presented by the DVD supporting these findings, and we should, therefore accept them for purposes of reviewing the suppression hearing per our standard of review.

{¶43} I respectfully dissent.