[Cite as *In re O.E.*, 2023-Ohio-1946.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

IN THE MATTER OF:

O.E., DELINQUENT CHILD

CASE NO. 2022-L-049

Criminal Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2021 DL 01260

## O P I N I O N

Decided: June 12, 2023
Judgment: Reversed and remanded

*Ron M. Graham*, 8270 Harbor Drive, Mentor, OH 44060 (For Appellant, O.E.).

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel* and *Emily E. Kontur*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, State of Ohio).

MATT LYNCH, J.

{¶1} Appellant, O.E., appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, denying his motion to suppress his confession to Rape. For the following reasons, we reverse the decision of the lower court granting the motion to suppress, vacate O.E.'s conviction for Rape, and remand for further proceedings consistent with this opinion.

{¶2} On November 24, 2021, a Complaint was filed in the juvenile court alleging that O.E. committed Rape, a felony of the first degree if committed by an adult, in violation of R.C. 2907.02(A)(1)(b), and Sexual Battery, a felony of the third degree if committed by

an adult, in violation of R.C. 2907.03(A)(3).

{¶3} O.E. filed a Motion to Suppress on February 15, 2022. It alleged that he should have been given *Miranda* warnings, emphasizing his age and autism diagnosis. A hearing on the motion to suppress was held on March 15, 2022. The following testimony was given:

{¶4} Detective Gregory Spakes of the Willowick Police Department investigated allegations of sexual abuse of a seven-year-old girl by her brother, 13-year-old O.E. Spakes requested that their mother bring them to the police department. After the victim spoke to a Job and Family Services employee, the mother gave a written statement. She left and then brought O.E. to the police station. Before O.E. was interviewed, his mother inquired whether he was going to be prosecuted, to which Spakes responded that it would be decided by the prosecutor's office. She asked if she needed to have an attorney and Spakes responded that he "could not advise her of that, that that was entirely up to her." According to Spakes, he told O.E. and his mother that they were "there on their own free will and that they could leave at any time." No *Miranda* warnings were given.

{¶5} According to Spakes, O.E. stated that he wanted to talk to him and was taken to an interview room without his mother, whom Spakes said did not wish to be present during the interview. Spakes testified that the mother informed him O.E. was "a highly functioning" autistic individual and, during the interview, he observed that O.E. was able to read, write, and "understand what was happening." During the interview, the door to the room was not locked; it was described as "shut" but "not connected," since it was the department policy to have the door closed to prevent recording of outside sounds. Spakes stated that he reminded O.E. three or four times during the interview that "the

2

door was open." O.E. was not handcuffed or arrested, although Spakes indicated that he did view him as a suspect.

{¶6} A recording of the interview, missing the first four minutes, was presented. Spakes did not know why the beginning was not recorded but noted that the department was using a new system. A video of the interview was played, during which, when asked what happened with his sister, O.E. stated that he began "feeling weird" and pulled down his sister's pants and engaged in an act of sexual intercourse. The officer described female and male anatomy and inquired as to the body parts involved in this act, which O.E. described. At the conclusion of the interview, O.E. gave a written statement.

{¶7} O.E.'s mother testified that she was not told by Spakes that she did not have to speak with him or about the right to leave. She testified that she was told she would be in the conference room during the interview and could watch video. This allowed her to hear some of the interview. She heard Spakes talk to O.E. about being free to leave "but they didn't make it out like he couldn't talk to them." She did not recall discussing an attorney with Spakes. She testified that she allowed O.E. to speak with Spakes although O.E. did not want to do so.

{¶8} The trial court denied the motion to suppress. It found that "the door was open, the juvenile was not under arrest, he was not handcuffed, not in a police car, not in a holding cell, not fingerprinted, his Mother was outside of the room, the door was unlocked, the Juvenile was not crying," that O.E. told Spakes he wanted to talk to him, and O.E. appeared intelligent and articulate. It found that "a reasonable 13 year old child would have felt free to terminate the interview and leave," he was not in custody, and an advisement of *Miranda* rights was not required.

3

{¶9} A trial was subsequently held, at which the State moved to dismiss the count of Sexual Battery. Following the trial, the court found the Rape charge to be true and found O.E. to be a delinquent child. He was sentenced to a term of 90 days in the detention facility and a suspended indefinite term of one year to the age of 21 in the Department of Youth Services.

{¶10} O.E. timely appeals and raises the following assignment of error:

{¶11} "The trial court erred in denying [the] motion to suppress, since statements were elicited during a custodial interrogation, thus, juvenile was required to be Mirandized, so admitting these statements violated his Fifth and Fourteenth Amendment Right[s]."

{¶12} O.E. argues that his admission was obtained during a custodial interrogation without being advised of his *Miranda* rights. He argues that the "interview" with the detective was conducted while he was in custody, emphasizing his age, the fact that the door was closed, that he was treated as a suspect, that he was led into answers, that the portion of the videotaped interview where O.E. was allegedly advised he was free to leave was missing, and that he was alone with the detective.

{¶13} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but "must then independently determine, without deference to the conclusion of the trial court [i.e., de novo], whether the facts satisfy the applicable legal standard." *Id.*

{¶14} In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694

4

(1966), "the United States Supreme Court established procedural safeguards for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution." *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 8; *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) ("[t]he Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement–the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will").

{¶15} "The procedural safeguards identified in *Miranda* apply only when one is subjected to custodial interrogation." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 26. "A custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Oles* at ¶ 9, quoting *Miranda* at 444.

{¶16} To determine whether an individual is in custody for the purposes of *Miranda*, the court considers "the circumstances surrounding the interrogation" and whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "A non-custodial interrogation becomes custodial when there is a 'formal arrest or restraint on freedom of movement' similar to that of a formal arrest." *State v. Guzzi*, 2015-Ohio-4426, 47 N.E.3d 476, ¶ 18 (11th Dist.), citing *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). "A determination of whether an interrogation is custodial or non-custodial depends on the objective circumstances of the interrogation, not the subjective views held

5

by either the officer or the person being questioned." *Id.*, citing *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

{¶17} In determining whether an interview is custodial, several factors have been considered. "In order to determine whether a person was in custody for purposes of providing *Miranda* warnings, 'the court should apply a totality of the circumstances test, including where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved.'" (Citations omitted.) *State v. Cheadle*, 11th Dist. Portage No. 2007-P-0083, 2008-Ohio-2393, ¶ 37; *State v. Billenstein*, 3d Dist. Mercer No. 10-13-10, 2014-Ohio-255, ¶ 44, citing *Howes v. Fields*, 565 U.S. 499, 510, 132 S.Ct. 1181, 182 L.E.2d 17 (2012) (factors to consider include the duration and location of questioning, the use of physical restraints, statements made during the interview, and whether the interviewee was released following questioning). *See also In re B.J.*, 11th Dist. Lake No. 2013-L-091, 2014-Ohio-5701, ¶ 19 (considering, inter alia, that the minor was told "he did not need to talk," the minor was brought to the station by his father, the presence of the minor's father in the interview room, the age of the minor, and the minor appeared "mature and intelligent").

{¶18} "In cases involving a juvenile, the juvenile suspect's age may be analyzed as part of the court's determination on whether a custodial interrogation occurred." *In re A.M.*, 3d Dist. Marion No. 9-20-23, 2021-Ohio-432, ¶ 29. The United States Supreme Court, in *J.D.B. v. North Carolina*, 564 U.S. 261, 265, 272, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), found that "a child's age properly informs the *Miranda* custody analysis," since "a reasonable child subjected to police questioning will sometimes feel pressured to

6

submit when a reasonable adult would feel free to go." The court emphasized that children "often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them," and "are more vulnerable or susceptible to … outside pressures" than an adult would be. (Citations omitted.) *Id.* at 272.

{¶19} Consideration of the totality of the circumstances supports the conclusion that O.E. was in custody and *Miranda* warnings were necessary. O.E. was only 13 years old during the interview, which is a significant factor for the reasons set forth in *J.D.B.* While age is not determinative, it is an important consideration here where the juvenile was very young, was not accompanied by his parents during the interview, the record did not indicate he had experience with the criminal justice system, and, according to Spakes, was known to have "high functioning" autism. The interview was conducted in the police station, in an interview room alone with a police officer much larger in size than the juvenile and wearing a visible firearm on his hip, all of which increased the likelihood that O.E. would not feel free to leave. While O.E.'s mother was present at the police station, she was not in the room during the interview. O.E. was in the interview room for approximately an hour, which is not a short period of time, particularly for a juvenile. The record also clearly indicates that the investigation had focused on O.E. as the suspect since he had been identified by the victim as perpetrating the sexual acts.

{¶20} Also significant here is the fact that the door was visibly shut during the interview process. Although it was not locked or "latched," this bears little weight. In the eyes of a juvenile, or any individual being questioned by police, the fact that the door was closed undercuts a belief that the individual can walk out at any time. Further, Spakes repeated to O.E. that the door was "open" when O.E. could observe this was not the case.

7

This could have easily confused O.E., leading him to believe he must remain in the interview room. Spakes' testimony that the door was open when it was contrary to the facts brings into question the credibility of his other testimony. This is particularly relevant here where Spakes testified that he informed O.E. that he was "free to leave" but such statements do not appear on the videotaped interview. Although this could be due to the fact that a portion of the interview was not recorded, it raises questions about the weight to be given to this testimony. *See In re J.S.,* 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, ¶ 14 (the court considered, in reaching the conclusion that the defendant was in custody, the fact that the video of the interview did not contain a statement that the defendant was told he was not under arrest, although the officer testified he had made such a statement).

{¶21} As facts weighing against a determination of a custodial interrogation, we note that O.E. was not restrained and was not taken into custody at the conclusion of the interview. Further, Spakes asked open-ended questions which allowed O.E. to speak and did not coerce or coach him into the answers given. O.E. appeared able to clearly describe his thoughts and understand the questions being asked, although we again must note the overall nature of the environment in which he was interviewed likely influenced O.E. and the statements he chose to make.

{¶22} A few other facts also warrant consideration. Although Spakes testified that he told O.E. and his mother that he was free to leave, it should be questioned to what degree a juvenile who was brought to the police station by his mother and is unable to drive was there of his own free will. It has been observed that, where a 14-year-old boy's mother agreed to bring him in for an interview, this "limit[ed] the extent of his control over

8

being there, * * * rendering his presence ostensibly involuntary." *In re T.W.*, 3d Dist. Marion No 9-10-63, 2012-Ohio-2361, ¶ 29. Also, as noted above, statements by Spakes to O.E. that the door was open and that he was free to leave do not weigh in favor of a finding that there was no custodial interrogation given the fact that these statements were inconsistent and did not reflect the reality of the circumstances faced by O.E.

{¶23} When weighing these facts, we find that the totality of the circumstances demonstrate that the questioning of O.E. was a custodial interrogation and a reasonable child of his age would not have felt free to leave during this questioning. O.E. was a young juvenile, was brought to a police station by his mother, and was questioned while closed in a room alone with an armed detective. This case shares similarities with *T.W.*, *supra*, where the Third District found a custodial interrogation occurred. In *T.W.*, a 14-year-old was transported to children's services by his mother after a police request to interview him in the investigation of a sexual crime. Prior to the interview, the child and his parents were advised that he was not under arrest and free to leave. He was then interviewed by a police officer in a room with a closed door. The court found that "a reasonable juvenile in T.W.'s position would not have felt free to terminate the interview and leave the premises." *Id.* at ¶ 31. *See also In re L.G.*, 2017-Ohio-2781, 82 N.E.3d 52, ¶ 15 (2d Dist.) (finding a custodial interrogation occurred when, in the midst of an investigation, a 13-year-old student was questioned by a school district director of safety, since a reasonable juvenile in his position would not have felt free to leave). While consideration of the subjective beliefs of the defendant is not proper when determining whether there is a custodial interrogation, consideration of certain characteristics and circumstances of that defendant have been found appropriate for consideration under the

9

objective standard, in particular the offender's young age. The United States Supreme Court, in *J.D.B.*, 564 U.S. at 275-276, 131 S.Ct. 2394, 180 L.Ed.2d 310, explained that "a child's age differs from personal characteristics that * * * have no objectively discernable relationship to a reasonable person's understanding of his freedom of action" and that considering a characteristic such as the defendant's age does not employ an improper subjective analysis since a reasonable juvenile's perception differs from that of a reasonable adult. In the present matter, we conclude that, when properly employing an objective analysis and considering all of the circumstances, a reasonable autistic 13-year-old would have believed he was in custody.

{¶24} The State argues that the court's determination that a custodial interrogation did not occur is supported by authority from other courts in this state. First, it cites to *State v. Brunson*, 2016-Ohio-8519, 78 N.E.3d 1242 (11th Dist.). In *Brunson*, the adult defendant was questioned by an officer in the police department squad room, with the door left open, by an officer in plain clothes, and a portion of the interview was unrecorded. Under these circumstances, this court held that the defendant was not in custody for the purposes of *Miranda*. *Id.* at ¶ 18-25. *Brunson* is readily distinguishable from the present matter. The interview was conducted in the "squad room," described as "an informal area where officers complete their paperwork," with the door open throughout the interview. In the present matter, the questioning took place in a separate interview room and not in an "informal area." *Id.* at ¶ 19. As discussed above, the video shows that the door was closed, if not locked or latched. These differences are significant since they would impact one's belief that he was free to leave. Further, perhaps most significantly, *Brunson* involved an adult rather than a juvenile.

10

Case No. 2022-L-049

{¶25} The State also cites *In re C.M.R.*, 2018-Ohio-110, 107 N.E.3d 34 (2d Dist.). In that case, the Second District found no custodial interrogation occurred where a 15-year-old was brought into a police station voluntarily by his mother; the detective told him he did not have to talk to her, was free to leave, and that the interview room door was unlocked; the interview lasted ten minutes; and the defendant was not handcuffed. *Id.* at ¶ 19-20. We find this distinguishable given the significant distinction that the detective "left the door to the interview room open during the entire interview." *Id.* at ¶ 20. The defendant was also two years older than O.E., which is significant when considering the maturity and understanding levels of a juvenile.

{¶26} For these reasons, we find that the statements made by O.E. to Spakes during the interview must be suppressed and it was error to deny the motion to suppress. We vacate O.E.'s conviction for Rape which resulted from improper admission of his confession.

{¶27} We acknowledge the serious nature of the crime alleged in this matter. Such a crime undoubtedly has a serious impact on the victim. For this reason, it is imperative that law enforcement handle such matters involving young victims, as well as young perpetrators, carefully and in a manner that ensures justice is served while their individual rights are also protected. Providing *Miranda* rights when a suspect is arguably in custody will not only protect the constitutional rights of that suspect but also protect the victim by allowing for all evidence of the crime to be properly admitted at trial.

{¶28} The sole assignment of error is with merit.

{¶29} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, denying O.E.'s motion to suppress his confession, is

11

reversed, his conviction for Rape is vacated, and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

JOHN J. EKLUND, P.J., concurs,

MARY JANE TRAPP, J., dissents with a Dissenting Opinion.

_____

MARY JANE TRAPP, J., dissents with a Dissenting Opinion.

{¶30} I respectfully dissent from the majority's determination that Det. Spakes' interview with O.E. was a custodial interrogation that required *Miranda* warnings. The majority's determination is based upon misconceptions of the applicable law as well as conclusions and inferences that are not supported by the evidence. A proper consideration of the objective circumstances surrounding the interview demonstrates O.E. was not in custody for purposes of *Miranda*.

{¶31} While I understand and share the concern about the power dynamic when a juvenile is facing a law enforcement officer during an investigation, the case law that controls our analysis makes it clear we are to consider the objective rather than subjective circumstances of the encounter in order to determine whether there was a significant restraint on this young man's freedom implicating *Miranda*. In this case, the video evidence before the trial court (even with the omission of the first four minutes of the encounter) and the testimony supports the trial court's decision to overrule the motion to suppress the juvenile's statements.

12

Case No. 2022-L-049

## Legal Standards

{¶32}  Police are not required to administer *Miranda* warnings to everyone they question.  *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). *Miranda* warnings are required in the context of "custodial interrogations."  *Yarborough v. Alvarado*, 541 U.S. 652, 661, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶33}  To determine whether an individual is in custody for purposes of *Miranda*, the court considers "the circumstances surrounding the interrogation" and whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."  *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).  A determination of whether an interrogation is custodial or non-custodial depends on the objective circumstances of the interrogation, not the subjective views held by either the officer or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). "[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Mathiason* at 495.

{¶34}  Relevant factors include (1) the location of the questioning; (2) its duration; (3) statements made during the interview; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the interviewee at the end of the questioning.  *Howes v. Fields*, 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012).

13

In addition, the Supreme Court of the United States has held a juvenile's age may be considered in the *Miranda* analysis, so long as the juvenile's age was known to the officer at the time of questioning or would have been objectively apparent to a reasonable officer. *J.D.B. v. North Carolina*, 564 U.S. 261, 277, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011).

{¶35} The Second District Court of Appeals has consistently considered ten factors to assess how a reasonable person would understand his or her situation:

"1. What was the location where the questioning took place—i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;

"2. Was the defendant a suspect at the time the interview began (bearing in mind that *Miranda* warnings are not required simply because the investigation has focused);

"3. Was the defendant's freedom to leave restricted in any way;

"4. Was the defendant handcuffed or told he was under arrest;

"5. Were threats made during the interrogation;

"6. Was the defendant physically intimidated during the interrogation;

"7. Did the police verbally dominate the interrogation;

"8. What was the defendant's purpose for being at the place where questioning took place? For example, [a] defendant might be at a hospital for treatment instead of being brought to the location for questioning;

"9. Were neutral parties present at any point during the questioning;

14

Case No. 2022-L-049

"10. Did police take any action to overpower, trick or coerce the defendant into making a statement." *State v. McCrary*, 2d Dist. Montgomery No. 18885, 2002 WL 125760, *2-3 (Feb. 1, 2002).

{¶36} I find these factors to be helpful in keeping the focus on the objective circumstances.

**The Trial Court's Findings**

{¶37} The trial court found "this youth was not handcuffed, not in a police car, not in a holding cell, not fingerprinted, not arrested, his mother was outside the room, the door was unlocked, the juvenile was not crying, * * * the detective conducted an interview with the juvenile. The detective testified that the youth wanted to talk to me. The detective told the youth, 'You are here voluntarily' and the child's response was, 'Okay.' Furthermore, the juvenile * * * appeared to be intelligent and articulate and mature on that videotape. The Court must determine whether or not the thirteen-year-old would have felt free to terminate the interview and leave. Based on the circumstances, the Court finds that a reasonable thirteen-year-old would have felt free to terminate the interview and leave. The Court further finds that the juvenile was not in custody and, therefore, Miranda rights were not required to be given." I agree.

**The Majority's Analysis**

{¶38} The majority concludes the questioning of O.E. was a custodial interrogation because (1) O.E. was 13 years old; (2) he is a "highly functioning" autistic person; (3) he lacked experience with the criminal justice system; (4) his mother brought him to the police station; (5) he was questioned without his parents in a closed interview room with

15

Case No. 2022-L-049

a much larger, armed police officer; (6) he was in the interview room for approximately one hour; and (7) he was viewed as a suspect.

{¶39} I disagree. First, there is no evidentiary basis to treat O.E.'s age as a significant factor. While a juvenile's age may be considered in the *Miranda* custody analysis, the Supreme Court of the United States cautioned this does not mean "a child's age will be a determinative, or even a significant, factor in every case." *J.D.B.* at 277. There is no evidence indicating O.E. failed to appreciate the nature of the interview. Rather, the trial court found O.E. was "not crying" and "appeared to be intelligent and articulate."

{¶40} Second, there is no basis to treat O.E.'s status as a "highly functioning" autistic person as a significant factor. The majority cites no authority indicating this is a proper "objective" factor to consider. Further, there was no testimony regarding whether, and to what extent, O.E.'s autism affected his ability to comprehend his situation.

{¶41} Third, there was no testimony regarding O.E.'s prior experience with the criminal justice system. Even if there was such testimony, the Supreme Court of the United States has held it is improper to consider this factor. *See Yarborough*, *supra*, at 668. This is because "the relationship between a suspect's past experiences and the likelihood a reasonable person with that experience would feel free to leave often will be speculative." *Id*.

{¶42} Fourth, the majority's finding that O.E.'s presence at the police station was "ostensibly involuntary" is not supported by the record. The trial court cited Det. Spakes' testimony that O.E. wanted to talk to him, which suggests O.E.'s presence was voluntary. When an appellate court reviews a trial court's ruling on a motion to suppress, it must

16

accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.

{¶43} The majority cites *In re T.W.*, 3d Dist. Marion No. 9-10-63, 2012-Ohio-2361, where the Third District made a similar finding and cited the Supreme Court of the United States' decision in *Yarborough*. *See id*. at ¶ 29. However, it was the dissenting opinion in *Yarborough* that stated, "the involvement of [the juvenile]'s parents suggest *in*voluntary, not voluntary behavior on [the juvenile]'s part." (Emphasis sic.) *Id*. at 671 (Breyer, J., dissenting). The majority found the fact the juvenile "was brought to the police station by his legal guardians rather than arriving on his own accord" made "the extent of his control over his presence *unclear*." (Emphasis added.) *Id*. at 665.

{¶44} Fifth, the fact O.E.'s parents did not accompany him into the interview room is not necessarily a significant factor. The law does not require a parent to be present during the questioning of a juvenile. *See In re Watson*, 47 Ohio St.3d 86, 89, 548 N.E.2d 210 (1989). O.E.'s mother was present in a conference room next door, which may weigh against a finding that O.E. was in custody. *See Yarborough* at 664 (noting the juvenile's "parents remained in the lobby during the interview").

{¶45} Sixth, there was no testimony about whether Det. Spakes was armed. Det. Spakes testified he was wearing "511s," which he described as "cargo pants" and a "polo shirt." While the video indicates Det. Spakes was armed, his firearm was housed in a holster on his hip. He did not display or brandish it at any time. For much of the interview, Det. Spakes' firearm was concealed by the desk at which he sat. Thus, when viewed objectively, "the presence of a firearm * * * merely identified [Det. Spakes] as a law

17

enforcement officer." *In re J.C.*, 11th Dist. Geauga No. 2011-G-3017, 2011-Ohio-5864, ¶ 76.

{¶46} Seventh, there is no evidentiary support for the majority's finding that O.E. could have been "confused" by Det. Spakes' statement that "the door is open." Det. Spakes testified his statement meant O.E. could pull open the unlatched door and leave the interview room. This is confirmed by the video, which depicts Det. Spakes telling O.E. "I'll leave the door open" and "The door's still open" on occasions when the detective momentarily left the interview room. There was no testimony suggesting O.E. was confused, and the majority's interpretation of the statement is not objectively reasonable.

{¶47} Eighth, the majority improperly questions Det. Spakes' credibility in order to discount his testimony that he informed O.E. he was "free to leave." "At a suppression hearing, * * * the credibility of witnesses are issues for the trier of fact." *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Thus, "a reviewing court should not disturb the trial court's findings on the issue of credibility." *State v. Ashford*, 11th Dist. Trumbull No. 99-T-0015, 2001 WL 137595, *2 (Feb. 16, 2001). The trial court's decision indicates it found Det. Spakes to be a credible witness. There is no valid basis for the majority to conclude otherwise.

{¶48} Further, whether Det. Spakes informed O.E. he was "free to leave" is not subject to reasonable dispute. Det. Spakes testified he made the statement to O.E. and his mother before taking O.E. into the interview room; therefore, its absence from the video is neither surprising nor suspicious. Most importantly, O.E.'s mother confirmed she heard Det. Spakes "talk to [O.E.] about that * * *."

18

{¶49} Ninth, the majority's finding that O.E. "was in the interview room for approximately an hour" is misleading. The entire video lasts approximately one hour. Det. Spakes' questioning of O.E., even if the four missing minutes are included, comprises approximately 20 minutes. This court has described an interview "lasting less than 30 minutes" as being "of a short duration." *In re B.J.*, 11th Dist. Lake No. 2013-L-091, 2014-Ohio-5701, ¶ 19.

{¶50} Finally, while the majority emphasizes the fact Det. Spakes considered O.E. to be a suspect, "[t]he fact that a suspect is being interviewed at a police station does not, *per se*, require a *Miranda* rights warning." *State v. Mason*, 82 Ohio St.3d 144, 154, 694 N.E.2d 932 (1998).

**A Proper Consideration**

{¶51} A proper consideration of the objective circumstances surrounding the interview demonstrates O.E. was not in custody for purposes of *Miranda*.

{¶52} The record reflects Hillcrest Hospital contacted the Willowick Police Department about a rape kit in an alleged sexual assault. O.E., the alleged offender, was 13 years old and was a "high functioning" autistic person; but again, there is nothing in the record linking this fact to an impaired ability to understand the nature of this encounter.

{¶53} Det. Spakes contacted O.E.'s mother and asked her to bring both O.E. and her daughter to the police station for questioning. The daughter was voluntarily interviewed by both the detective and a Job and Family Services worker in the morning. The mother completed a written statement and took the daughter home. She returned a few hours later with O.E. Det. Spakes concedes he considered O.E. to be a suspect at that time, but, upon arrival, O.E. was not handcuffed or otherwise restrained.

19

Case No. 2022-L-049

{¶54} The mother asked the detective in front of O.E. whether O.E. could face prosecution, to which the detective replied it was up to the prosecutor. She also asked in front of O.E. whether they needed a lawyer, and the detective responded he could not advise her. Critically, the detective testified he told O.E. and his mother they were both there on their own free will and could leave at any time. There is nothing in this record indicating the mother or O.E. failed to comprehend this information. According to Det. Spakes, O.E. said he wanted to speak to the detective, and the mother did not want to be in the room.

{¶55} Det. Spakes took O.E. to an interview room. Although O.E.'s mother was not present, she remained in the conference room next door. The interview was recorded, although the beginning four minutes are missing for unexplained reasons.

{¶56} In the interview room, O.E. sat in a chair, while Det. Spakes sat behind a desk. As noted earlier, the detective was dressed in cargo pants and a polo shirt. The door to the interview room was closed; however, it was not latched or locked. Det. Spakes did not verbally dominate the interview; rather, he asked open-ended questions and did not coach O.E.'s answers. The detective's questions were mostly confined to "what happened next?" and "describe what you mean." Det. Spakes did not threaten or to attempt overpower, trick, or coerce O.E, nor did he take any action that could be construed as physical intimidation. O.E. appeared able to clearly describe his thoughts and understand the questions being asked. The detective's testimony about his interview and the video evidence of that interview is consistent with an encounter at a police station designed to determine what actually happened between brother and sister as opposed to eliciting incriminating responses.

20

Case No. 2022-L-049

{¶57} The interview lasted approximately 20 minutes. Afterward, Det. Spakes asked O.E. to complete a written statement. Before leaving the room on two occasions, Det. Spakes stated "I'll leave the door open" and "The door's still open." After completing his written statement, O.E. was not arrested and left with his mother.

{¶58} Based on the foregoing circumstances, there was no restraint on O.E.'s freedom of movement to the degree associated with a formal arrest. I agree with the trial court that a reasonable juvenile in O.E.'s position would have felt free to terminate the interview and leave. Accordingly, I would affirm the trial court's judgment.

Case No. 2022-L-049